**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY CRASS, Individually and on Behalf of All Others Similarly Situated, | Case No. 21-6854 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| YALLA GROUP LIMITED and TAO YANG, | |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff Jeffrey Crass ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys for Plaintiff's Complaint against Defendants Yalla Group Limited ("Yalla" or the "Company") and its Chief Executive Officer Tao Yang ("Yang") (collectively, "Defendants"), alleges the following based upon personal knowledge, as to Plaintiff and Plaintiff's own acts, and upon information and belief, as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Yalla's press releases, Securities and Exchange Commission ("SEC") filings, analyst reports, media reports, and other publicly disclosed reports and information about the Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a securities class action on behalf of Plaintiff and all other persons or entities, except for Defendants, who purchased or otherwise acquired Yalla American Depository Shares ("ADSs") between September 30, 2020 and August 9, 2021, inclusive (the "Class Period"). This action is brought on behalf of the Class (defined below) for violations of §§10(b) and 20(a) of the

Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

2.     Yalla is a holding company under the laws of the Cayman Islands and is headquartered in the United Arab Emirates.  Yalla's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "YALA."

3.     Yalla is a voice-centric social networking and entertainment platform that operates mainly in the Middle East and Northern Africa ("MENA") region.

4.     Yalla held its U.S. initial public offering ("IPO") on or about September 29, 2020. The IPO consisted of an offering of 18.6 million ADS, each representing one Class A ordinary share, at $7.50 per ADS.

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business and financial metrics.  Specifically, Defendants made false and/or misleading statements regarding, and/or failed to disclose that the Company overstated its user metrics and revenue and, as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     On May 19, 2021, Swan Street Research ("Swan Street") published a report (the "Swan Street Report") addressing Yalla, entitled "Is Yalla Group a Multi $B Fraud? The 'Clubhouse of the Middle East' UAE Tech Unicorn that Never Was."  The Swan Street Report alleged, among other things, that the Company has been inflating its financial metrics, including its user data and its revenue, and characterized Yalla's financial statements as "not credible."

7.     On this news, the price of Yalla ADS fell $1.31 per share, or 7.15%, to close at $17.01 per ADS on May 19, 2021.

8.      The next day, May 20, 2021, analyst The Bear Cave issued a report entitled, "Problems at Yalla Group," and Gotham City Research also tweeted that it was shorting Yalla ADS.

9.      On this news, the price of Yalla ADS fell an additional 6% on May 20 to close at $15.96.

10.     Then, on August 9, 2021, after the markets closed, Yalla issued a press release entitled, "Yalla Group Limited Announces Unaudited Second Quarter 2021 Financial Results," announcing its financial results for the second quarter of 2021 ("2Q21 Results").

11.     The 2Q21 Results disclosed that Yalla had quarterly revenue of $66.62 million, which did not meet analysts' expectations.

12.     On this news, the price of Yalla ADS fell nearly 18.9% on August 10, 2021, closing at $10.99, down from its previous close price of $13.55.

13.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

16.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  Defendants' false and misleading statements and omissions were disseminated in this

District.  Yalla's ADSs are listed on the NYSE, a national securities exchange.  Therefore, the alleged illegal conduct was carried out, in part, in this judicial District.

17.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and facilities of the national securities exchange.

## PARTIES

18.     As set forth in the attached Certification, Plaintiff Jeffrey Crass acquired Yalla ADSs at artificially inflated prices during the Class Period and was damaged due to the federal securities violations and related misstatements alleged herein.

19.     Defendant Yalla is incorporated in the Cayman Islands, with headquarters in the United Arab Emerites.  Yalla ADSs trade on the NYSE under the ticker symbol "YALA."

20.     Yalla (formerly known as "FYXTech Corporation"), through its wholly-owned subsidiaries, operates a voice-centric social networking and entertainment platform, mainly in the MENA region.  The platform allows individual users free access to the basic functions on the platform.  It also provides enhanced experiences for individual users by sales of virtual items and provision of upgrade services on the platform.  One of Yalla's offerings is Yalla Ludo, a chatroom feature in a board game app.

21.     Defendant Yang has served at all relevant times as the Company's Chairman and Chief Executive Officer ("CEO").  Yang had the power and authority to control the contents of Yalla's SEC filings, press releases, and other market communications.

## SUBSTANTIVE ALLEGATIONS

22.     The Class Period starts on September 30, 2020, the day Yalla ADS began trading on the NYSE.

4

23.     Prior to then, Yalla had filed with the SEC a Registration Statement (including a Prospectus) in connection with the IPO.  The Registration Statement became effective on September 29, 2020.

**Materially False and Misleading Statements Issued During the Class Period**

24.     In the Registration Statement, the Company describes its user base as follows, in pertinent part:

> Today, we are the largest voice-centric social networking and entertainment platform in MENA as measured by revenue in 2019, according to the Frost & Sullivan Report.  We have built a large and vibrant Yalla community.  In the second quarter of 2020, approximately 12.5 million users visited our platform on average each month; they spent a total of 309.5 million hours in our live voice chat rooms, or Yalla rooms, and played a total of 407.2 million rounds of casual games on Yalla Ludo.  The number of paying users on our platform was 5.4 million in the second quarter of 2020.  On average, active users of Yalla and Yalla Ludo spent approximately 4.5 hours and 1.4 hours on our platform every day in the second quarter of 2020, respectively.

25.     The Registration Statement identifies "Key Operating Metrics" of the Company, which are all keyed off how many users are using its platform:  average monthly active users ("MAUs"), paying users, and average revenues per paying user ("ARPPU").

26.     According to the Registration Statement, these metrics have all had massive growth over the past three years.  For example, the Registration Statement states, in pertinent part:

| | Three Months Ended | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | September 30, 2018 | December 31, 2018 | March 31, 2019 | June 30, 2019 | September 30, 2019 | December 31, 2019 | March 31, 2020 | June 30, 2020 |
| **Average MAUs (in thousands)** | **2,046** | **2,174** | **2,272** | **2,557** | **3,109** | **4,151** | **6,127** | **12,460** |
| Yalla (in thousands) | 2,046 | 2,173 | 2,250 | 2,428 | 2,716 | 3,286 | 4,016 | 4,835 |
| Yalla Ludo (in thousands) | — | 1 | 22 | 129 | 393 | 865 | 2,111 | 7,625 |
| **Paying users (in thousands)** | **417** | **451** | **547** | **790** | **510** | **723** | **1,620** | **5,360** |
| Yalla (in thousands) | 417 | 451 | 547 | 789 | 493 | 549 | 759 | 1,080 |
| Yalla Ludo (in thousands) | — | — | 0.1 | 1 | 17 | 174 | 861 | 4,280 |
| **ARPPU (US$)** | **33.4** | **27.8** | **22.2** | **18.0** | **34.8** | **26.6** | **13.0** | **5.9** |
| Yalla (US$) | 33.4 | 27.8 | 22.3 | 18.1 | 36.1 | 35.0 | 27.6 | 26.9 |
| Yalla Ludo (US$) | — | — | 0.2 | 0.5 | 0.1 | 0.1 | 0.1 | 0.6 |

27.     The Registration Statement also touts the Company's financial performance, including, in pertinent part:

**Our Financial Performance**

We have experienced strong revenue growth in recent years. We primarily generate our revenues from users' consumptions of virtual items and upgrade services. Virtual items primarily consist of various virtual gifts. Upgrade services primarily consist of VIP rights or premium membership on our platform. Our revenues increased by 49.8% from US$42.4 million in 2018 to US$63.5 million in 2019. Our revenues increased by 99.6% from US$26.4 million in the six months ended June 30, 2019 to US$52.8 million in the six months ended June 30, 2020.

Our innovative business model focuses on users' interactions and social networking experience on our platform. Therefore, we do not incur significant content acquisition cost, such as incentive fees to key users or costs for acquiring media content. Our user acquisition channels have been cost-effective. As a result, we are able to achieve high profitability. Our net income was US$20.2 million and US$28.9 million in 2018 and 2019, respectively, and our net margin was 47.8% and 45.6% in 2018 and 2019, respectively. Our net income was US$11.4 million and US$25.2 million in the six months ended June 30, 2019 and 2020, respectively, and our net margin was 43.3% and 47.8% in the six months ended June 30, 2019 and 2020, respectively.

28.     The Registration Statement also touts the Company's revenue growth, including, in pertinent part:

Revenues. Our total revenues increased by 99.6% from US$26.4 million in the six months ended June 30, 2019 to US$52.8 million in the same period in 2020, which was primarily driven by an increase of paying users of Yalla, which grew from 789.5 thousand in the three months ended June 30, 2019 to 1.1 million in the same period in 2020, as well as an increase in ARPPU of Yalla, which grew from US$18.1 in the three months ended June 30, 2019 to US$26.9 in the same period in 2020. The growth in paying users and ARPPU of Yalla was primarily due to the superior user experience we offer, diversification of transaction scenarios on our platform and the expansion of user community. In addition, paying users of Yalla Ludo increased rapidly from 0.6 thousand in the three months ended June 30, 2019 to 4.3 million in the same period in 2020. The growth was primarily due to optimization of user experience through localized product design and interactive features, as well as the expansion of user community as a result of high rankings of Yalla Ludo on certain major app stores' recommendation pages. We expect Yalla Ludo to become a significant driver of revenue growth in the future, as we continue to expand the user base of Yalla Ludo.

29.     On November 9, 2020, Yalla filed a Form 6-K with the SEC (the "3Q20 6-K") that highlighted the Company's revenue growth in the third quarter of of 2020 as well as the Company's

user growth in terms of "Average MAUs" and "number of paying users."  The 3Q20 6-K stated, in pertinent part:

### Third Quarter Ended September 30, 2020 Financial and Operating Highlights

- **Our revenues** were US$33.8 million in the third quarter of 2020, representing an increase of 90.4% from the third quarter of 2019.
- **Revenues** generated from chatting services in the third quarter of 2020 were US$30.3 million.
- **Revenues** generated from games services in the third quarter of 2020 were US$3.5 million.
- **Net loss** was US$31.0 million in the third quarter, and our net loss margin was 91.6%.
- **Non-GAAP Net income** was US$15.5 million in the third quarter of 2020, representing an increase of 68.3% from the third quarter of 2019. Our non-GAAP net margin was 45.8% in the third quarter of 2020.
- **Average MAUs** increased by 358.9% to 14.3 million in the third quarter from 3.1 million in the same period 2019.
- **The number of paying users** on our platform increased by 894.9% to 5.1 million in the third quarter of 2020 from 0.5 million in the same period of 2019.

[footnotes omitted].

30.     Regarding the Company's outlook for the future, the 3Q20 6-K stated, in pertinent part:

### Outlook

For the fourth quarter of 2020, the management of the Company currently expects revenues to be between US$35.0 million and US$36.0 million, which would represent an increase of approximately 81.6% to 86.8% from US$19.3 million for the fourth quarter of 2019.

31.     The Company hosted a related earnings conference call on November 9, 2020, repeating these and similar misrepresentations.

32.     On March 16, 2021, Yalla filed a Form 6-K with the SEC (the "4Q20 6-K") that highlighted the Company's revenue growth in the fourth quarter of of 2020 as well as the Company's user growth in terms of "Average MAUs" and "number of paying users."  The 4Q20 6-K stated, in pertinent part:

**Fourth Quarter Ended December 31, 2020 Financial and Operating Highlights**

- **Revenues** were US$48.3 million in the fourth quarter of 2020, representing an increase of 150.9% from the fourth quarter of 2019.
- **Revenues** generated from chatting services in the fourth quarter of 2020 were US$42.6 million.
- **Revenues** generated from games services in the fourth quarter of 2020 were US$5.7 million.
- **Net income** was US$9.0 million in the fourth quarter and net margin was 18.6%.
- **Non-GAAP Net income** was US$23.3 million in the fourth quarter, representing an increase of 181.6% from the fourth quarter of 2019. Non-GAAP net margin was 48.3% in the fourth quarter of 2020.
- **Average MAUs** increased by 295.4% to 16.4 million in the fourth quarter from 4.2 million in the fourth quarter of 2019.
- **The number of paying users** on our platform increased by 624.2% to 5.2 million in the fourth quarter of 2020 from 0.7 million in the fourth quarter of 2019.

[footnotes omitted].

33.     Regarding the Company's outlook, the 4Q20 6-K stated, in pertinent part:

**Outlook**

For the first quarter of 2021, the management of the Company currently expects revenues to be between US$60.0 million and US$63.0 million, which would represent an increase of approximately 184.7% to 198.9% from US$21.1 million for the first quarter of 2020.

34.     On March 23, 2021, Yalla held its earnings call for the fourth quarter of 2020.  On the call, Defendant Yang touted the Company's user growth as well as the success of Yalla Ludo:

Monthly active users for our group increased 15% Q-on-Q and reached 16.4 million.  In addition, our ability to monetize our user base also continued to improve, as our group's ARPPU grew rapidly by 38.5% quarter-over-quarter and reached 9.2 in Q4.  Yalla Group's paying users also increased to 5.2 million.

Let me provide an example of how we are approaching monetization.  A great example is Yalla Ludo.  It started as casual game platform and has shown strong user growth since the beginning of 2020.  To boost its monetization capabilities, in July 2020, we introduced chat room functionality into the platform, in an effort to strengthen the social connections among our casual game users.  With improved user engagement and further monetization, Yalla Ludo accounted for more than half of our group's quarterly revenue in Q4.

35.     On May 12, 2021, Yalla filed a Form 6-K with the SEC (the "1Q21 6-K") that highlighted the Company's revenue growth in the first quarter of 2021 as well as the Company's

user growth in terms of "Average MAUs" and "number of paying users." The 1Q21 6-K stated,

in pertinent part:

### First Quarter Ended March 31, 2021 Financial and Operating Highlights

- **Revenues** were US$67.6 million in the first quarter of 2021, representing an increase of 221.0% from the first quarter of 2020.
- **Revenues** generated from chatting services in the first quarter of 2021 were US$54.8 million.
- **Revenues** generated from games services in the first quarter of 2021 were US$12.8 million.
- **Net income** was US$19.8 million in the first quarter and net margin was 29.3%, representing an increase of 114.6% from the first quarter of 2020.
- **Non-GAAP net income** was US$33.6 million in the first quarter, representing an increase of 263.7% from the first quarter of 2020. Non-GAAP net margin was 49.7% in the first quarter of 2021.
- **Average MAUs** increased by 206.9% to 18.8 million in the first quarter of 2021 from 6.1 million in the first quarter of 2020.
- **The number of paying users** on our platform increased by 260.4% to 5.8 million in the first quarter of 2021 from 1.6 million in the first quarter of 2020.

[footnotes omitted].

36.      Regarding the Company's outlook, the 1Q21 6-K stated, in pertinent part:

### Outlook

For the second quarter of 2021, the management of the Company currently expects revenues to be between US$65.0 million and US$71.0 million, which would represent an increase of approximately 105.2% to 124.1% from US$31.7 million for the second quarter of 2020.

37.      The foregoing statements were false and misleading because Defendants made false

and/or misleading statements regarding, and/or failed to disclose that the Company overstated its

user metrics and revenue and, as a result, the Company's public statements were materially false

and misleading at all relevant times.

**The Truth Begins to Emerge**

38.     On May 19, 2021, Swan Street published the Swan Street Report addressing Yalla,

entitled "Is Yalla Group a Multi $B Fraud? The 'Clubhouse of the Middle East' UAE Tech Unicorn

that Never Was."

39.     The Swan Street Report stated, among other things:

**Swan Street Research's Core Opinions**

Yalla Group's user metrics are inflated 5x (7x adjusted for bots).

We are incapable of squaring Yalla's financials with observed in-app usage, 3rd party
data, and former employee interviews.  ***We harbor deep skepticism of Yalla's reported
revenues and cash balance***.  We believe ~50% of revenues and ~50% of Yalla's cash
balance are likely fictitious.

Yalla's financial statements do not reconcile with economic reality and ***Yalla is a
credible de-listing candidate***.  We value Yalla at $1-2 per share, or Yalla's IPO cash.

40.     The Swan Street Report also stated, in pertinent part:

We believe Google Search data, SEMrush organic traffic, and SensorTower[1] data
are all deeply incongruent with Yalla's reported figures.  Most accounts are fake,
according to our interview with a former Yalla operations manager.  We hired a
developer to scrape the app; we believe Yalla's MAUs are 5x overstated (7x
adjusted for bots), based on automated and manual in-app data checks.

…

SensorTower estimates that Yalla is actually several times smaller than as reported,
and not growing.  SensorTower estimates show a widening differential as Yalla
reports that Yalla is growing.

41.     The Swan Street Report also stated, in pertinent part:

Yalla's audit partner has a pattern of auditing questionable companies, including Danke,
which was de-listed by the NYSE in April 2021 for failure to respond to regulator
inquiries.  Yalla's auditor is not inspected by the PCOAB and Yalla claims to have a
"lack of accounting personnel with appropriate knowledge of US GAAP."

---

[1]     Sensor Tower is a leading source of enterprise-grade market intelligence and performance
metrics in the mobile app ecosystem (this footnote not in original).

42.     The Swan Street Report further stated, in pertinent part:

We believe that Yalla's financial statements are not credible.  Given Yalla's FCF
margins, fake revenue would manifest as fake cash.  We identify key red flags
around Yalla's cash balance and cite SensorTower estimates that Yalla revenues
are less than 1/3rd Yalla's reported revenue.

43.     Regarding Yalla Ludo, the Swan Street Report stated, in pertinent part:

We are deeply skeptical; Yalla implies this side-feature has grown as large as Yalla's
core five-year-old app in only nine months.  There are Yalla Ludo users talking about
using the board game in reviews and on social media, but they virtually never reference
the chatroom feature.  In-app checks find a negligible actual app user base.  Yalla has
begun to shy away from directly discussing the Ludo chat feature on recent PRs and
earnings calls.

44.     On news of the Swan Street Report, the price of Yalla ADS fell $1.31 per share, or

7.15%, to close at $17.01 per ADS on May 19.

45.     On May 19, 2021, Yalla issued a press release entitled, "Yalla Group Limited

Responds to Short Attack Reports."  The press release stated, "[t]he Company firmly denies any

allegation or claim suggesting that the Company did not provide true and accurate public

disclosure about its business and financial performance."

46.     The next day, May 20, 2021, analyst The Bear Cave issued a report entitled,

"Problems at Yalla Group," and Gotham City Research also tweeted that it was shorting Yalla

ADS.

47.     On this news, the price of Yalla ADS fell an additional 6% on May 20 to close at

$15.96.

48.     Then, on August 9, 2021, after the markets closed, Yalla issued a press release

entitled, "Yalla Group Limited Announces Unaudited Second Quarter 2021 Financial Results,"

announcing its financial results for the second quarter of 2021 ("2Q21 Results").  The Company

held its Second Quarter 2021 Earnings Conference Call with investors and analysts the same night.

49.     The 2Q21 Results disclosed that Yalla had quarterly revenue of $66.62 million, which did not meet analysts' expectations.  According to *The Motley Fool*, "[h]eading into Q2, Wall Street had forecast $0.17 per share in profit on sales of $68 million for Yalla.  As it turned out, the company earned only $0.10 per share, and sales were $66.6 million."

50.     On this news, the price of price of Yalla ADS fell nearly 18.9% on August 10, 2021, closing at $10.99, down from its previous close price of $13.55.

## NO SAFE HARBOR

51.     Yalla's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.  Because most of the false and misleading statements related to existing facts or conditions, the Safe Harbor has no applicability.  To the extent that known trends should have been included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), they are excluded from the protection of the statutory Safe Harbor.  15 U.S.C. §78u-5(b)(2)(A).

52.     The Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer and/or director of Yalla who knew that the FLS was false.  In addition, the FLS was contradicted by existing, undisclosed material facts that were required to be disclosed, so that the FLS would not be misleading.  Finally, most of the purported "Safe Harbor" warnings were themselves misleading because they warned of "risks" that had already materialized or failed to provide any meaningful disclosures of the relevant risks.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class consisting of all those who purchased or

otherwise acquired Yalla ADSs on U.S. exchanges during the Class Period and were damaged upon the revelation of the alleged truth (the "Class"). Excluded from the Class are: Defendants herein; the officers and directors of the Company, at all relevant times; members of Defendants' immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

54.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Yalla ADSs were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

55.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

56.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation. Plaintiff has no interest, antagonism, or conflict with the members of the Class.

57.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Yalla;

c.      whether Defendant Yang caused Yalla to issue false and misleading financial statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.      whether the prices of Yalla ADSs during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

59.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations and/or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      Yalla ADSs are traded in an efficient market;

      d.      the Company's ADSs were liquid and traded with moderate to heavy volume during the Class Period;

      e.      the Company traded on the NYSE and was covered by multiple analysts;

      f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

      g.      Plaintiff and members of the Class purchased, acquired, and/or sold Yalla ADSs between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

60.      Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

61.      Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I
**Violations of §10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

62.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.      This Count is asserted against all Defendants and based upon violations of §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

64.      During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices, and courses of business that operated as fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and the other members of the Class, as alleged herein; (ii) artificially inflate and maintain the market price of Yalla ADSs; and (iii) cause Plaintiff and the other members of the Class to purchase, or otherwise acquire, Yalla ADSs and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants took the actions set forth herein.

65.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media, that were designed to influence the market for Yalla common stock.  Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Yalla's ability to timely bring products to market.

66.     By virtue of their positions at Yalla, Defendant Yang had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or in the alternative, Defendant Yang acted with reckless disregard for the truth in that he failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Yang.  Said acts and omissions of Yang were

committed willfully or with reckless disregard for the truth.  In addition, Yang knew or recklessly disregarded that material facts were being misrepresented or omitted, as described above.

67.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the CEO of Yalla, Yang had knowledge of the details of Yalla's internal affairs.

68.     Yang is liable both directly and indirectly for the wrongs complained of herein. Because of his position of control and authority, Yang was able to, and did, directly or indirectly, control the content of the statements of Yalla.  As an officer and director of a publicly held company, Yang had a duty to disseminate timely, accurate, and truthful information with respect to Yalla's businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Yalla common stock was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Yalla's business and financial condition, which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Yalla common stock at artificially inflated prices and relied upon the price of the securities, integrity of the market for the securities, and/or statements disseminated by Defendants and were damaged thereby.

69.     During the Class Period, Yalla common stock was traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Yalla common stock at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said

securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Yalla common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Yalla common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

70.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of Yalla ADSs during the Class Period upon the disclosure that the Company had disseminated to the public information about its ability to adequately research, develop, obtain approval for, and launch products that was materially misleading.

## COUNT II
### Violations of §20(a) of the Exchange Act
### Against Defendant Yang

72.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.     This Count is asserted against Defendant Yang and based upon violations of §20(a) of the Exchange Act, 15 U.S.C. §78(t)(a).

74.     During the Class Period, Yang participated in the operation and management of Yalla and conducted and participated, directly and indirectly, in the conduct of Yang's business affairs.  Because of his senior position as the Company's President and CEO, he knew the adverse non-public information alleged herein.

75.     As officer and director of a publicly owned company, Yang had a duty to disseminate accurate and truthful information, with respect to Yalla's financial condition and operations, and promptly correct any public statements issued by Yalla that had become materially false or misleading.

76.     Because of his position of control and authority as a senior officer and director, Yang was able to, and did, control the contents of the various reports, press releases, and public filings that Yalla disseminated in the marketplace during the Class Period concerning Yalla's results of operations.  Throughout the Class Period, Yang exercised his power and authority to cause Yalla to engage in the wrongful acts complained of herein.  Yang, therefore, was a "controlling person" of Yalla within the meaning of §20(a) of the Exchange Act.  In this capacity, he participated in the unlawful conduct alleged that artificially inflated the market price of Yalla common stock.

77.     Yang, therefore, acted as a controlling person of Yalla.  By reason of his senior management positions and being a director of Yalla, Yang had the power to direct the actions of Yalla and exercised same to cause the Company to engage in the unlawful acts and conduct complained of herein.  Yang exercised control over the general operations of Yalla and possessed the power to control the specific activities that comprise the primary violations about which Plaintiff and the other members of the Class complain.

78.     By reason of the above conduct, Defendant Yang is liable pursuant to §20(a) of the Exchange Act for the violations committed by Yalla.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      Declaring that the instant action may be maintained as a class action under Fed. R. Civ. P. 23 and certifying Plaintiff as the Class Representative;

B.      Awarding Plaintiff and the other members of the Class compensatory damages;

C.      Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

D.      Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  August 13, 2021                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 */s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV (TL-8888)
Rhiana L. Swartz (RS-2332)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com

*Attorneys for Plaintiff Jeffrey Crass*