**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY CRASS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>YALLA GROUP LIMITED and TAO YANG,<br><br>    Defendants. | **CASE No.: 1:21-cv-06854-PAE**<br><br>**MEMORANDUM OF LAW OF GANG WANG IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>**CLASS ACTION** |

1

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................... 5

II.   ARGUMENT ........................................................................................................... 6

  A.   THE XU GROUP IS INADEQUATE AND ATYPICAL ................................................. 6

     a.   The Xu Group Has Submitted Defective Certifications.................................................. 6

     b.   The Xu Group is an Improper Lawyer-Made Group of Unrelated Investors.................. 7

     c.   Mr. Xu is an Atypical and Inadequate Options Trader and Short Seller ....................... 12

  B.   MR. WANG SHOULD BE APPOINTED LEAD PLAINTIFF....................................... 13

  C.   MR. WANG'S CHOICE OF COUNSEL SHOULD BE APPROVED ........................... 14

III.   CONCLUSION....................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362 (S.D. Tex. Jan. 22, 2018) ............ 10

*Chauhan v. Intercept Pharms.*, 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ................................ 6

*Cook v. Allergan PLC*, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)........................................ 12

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020)

...................................................................................................................................................... 11

*Goldberger v. PXRE Grp., Ltd.*, 2007 WL 980417 (S.D.N.Y. Mar. 30, 2007) ............................. 8

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) ......................................................................... 5

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)............................................................. 5

*In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102 (N.D. Cal. 2001) ............................ 11

*In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156 (S.D.N.Y. 1997) ............................................. 8

*In re Level 3 Commc'ns, Inc.*, 2009 WL 10684924 (D. Colo. May 4, 2009) .............................. 10

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013) 8

*In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147 (D. Del. 2005)............................. 13

*In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334 (S.D.N.Y. 2005)...................................................... 8

*In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081 (S.D.N.Y. Oct. 14,

2014).......................................................................................................................................... 8, 9

*In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833 (N.D. Cal. 2019)...................................... 10

*Isaacs v. Musk*, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom.*

*In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018).............................. 11

*Jakobsen v. Aphria Inc.*, 2019 WL 1533598 (S.D.N.Y. Mar. 27, 2019) ............................. 6, 9, 10

*Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373 (S.D.N.Y. 2015)................................. 13

*Khunt v. Alibaba Grp. Holding Ltd.,* 102 F.Supp.3d 523 (S.D.N.Y. 2015) ................................... 8

*Kniffin v. Micron Technology, Inc*., 2019 WL 2119613 (S.D.N.Y. April 30, 2019) .................. 6, 9

*Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214 (D.N.J. Nov. 21, 2017)............. 5

*Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187 (S.D.N.Y.

    2011).................................................................................................................................... 9

*Sterling Fifth Assocs. v. Carpentile Corp.*, 2003 WL 22227960 (S.D.N.Y. Sept. 26, 2003) ......... 5

*Stires v. Eco Science Solutions, Inc*., 2018 WL 5784817 (D.N.J. Feb. 14, 2018) ..................... 7, 8

*Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 (D.N.J. Nov. 6, 2018).............................. 9, 10

*Tsirekidze v. Syntax-Brillian Corp.,* 2008 WL 942273 (D. Ariz. Apr. 7, 2008)........................... 10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388 (S.D.N.Y. 2008)

    .................................................................................................................................... passim

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................... 4, 5, 13

28 U.S.C. § 1746............................................................................................................. 4, 5, 6

**Rules**

Fed. R. Civ. P. 23................................................................................................................ 5, 12

Lead Plaintiff Movant Gang Wang ("Mr. Wang") respectfully submits this memorandum in opposition to the competing lead plaintiff motions filed by Simon Zhu ("Mr. Zhu") (Dkt. No. 19), and Peifa Xu and Yongjun Li (the "Xu Group") (Dkt. No. 27).

## I.    INTRODUCTION

Before the Court are three[1] lead plaintiff motions. While an unrelated group of investors called the Xu Group ($376,911 in claimed losses) claims to have suffered larger losses than Mr. Wang ($109,801 in claimed losses), the Xu Group cannot qualify as the presumptive lead plaintiff as it cannot meet Rule 23's typicality and adequacy requirements. Preliminarily, the Xu Group has submitted defective PSLRA certifications that are not properly sworn under penalty of perjury "under the laws of the United States of America". 28 U.S.C. § 1746(1). Additionally, the Xu Group is an improper group of unrelated investors from Canada and China cobbled together by counsel to create the largest financial interest. Further, one group member, Peifa Xu ("Mr. Xu") engaged in atypical options trading—including short sales—rendering the grouping atypical.

In contrast, Mr. Wang lost over $109,801. Mr. Wang has submitted a proper sworn certification. Dkt. No. 18-2. Mr. Wang has been investing for 25 years and is the founder and CEO of his own consulting firm. Dkt. No. 18 at 7. Mr. Wang is more than adequate to serve as lead plaintiff and is the presumptive Lead Plaintiff. Because no movant can offer any proof that Mr. Wang is inadequate or atypical, the Court should appoint Mr. Wang as Lead Plaintiff and approve his selection The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[1] On October 26, 2021, Steve Hu and Yechen Dong filed a notice of non-opposition to the competing lead plaintiff motions. Dkt. No. 33. Also on October 26, 2021, Scott A. Monett filed a withdrawal of his motion for appointment as lead plaintiff. Dkt. No. 34.

## II.    ARGUMENT

Under the PSLRA's analysis, Mr. Wang should be appointed the Lead Plaintiff as "[i]n appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). "If [the movant alleging the greatest financial interest] does not satisfy the criteria of Rule 23, the Court must repeat the Rule 23 inquiry, this time considering the plaintiff with the next-largest financial stake. The Court so proceeds until it finds a plaintiff who is willing to serve and is able to satisfy the requirements of Rule 23." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 n.7 (S.D.N.Y. 2008) (citing *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)).

"If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should … disqualify that movant from serving as lead plaintiff' and "then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Cendant*, 264 F.3d at 267.

### A.    THE XU GROUP IS INADEQUATE AND ATYPICAL

#### a.  The Xu Group Has Submitted Defective Certifications

Both members of the Xu Group have submitted a defective certification. According to the Xu Group, Yongjun Li lives in China and Mr. Xu in Canada. As such, their certification required each of them declare under penalty of perjury "under the laws of the United States of America" to be effective. 28 U.S.C. § 1746(1) and 15 U.S.C. § 78u-4(a)(2)(A); *Sterling Fifth Assocs. v. Carpentile Corp.*, 2003 WL 22227960, at \*5 (S.D.N.Y. Sept. 26, 2003) (requiring the "under the laws of the United States of America" language); *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at \*3 (D.N.J. Nov. 21, 2017) (rejecting lead plaintiff movants who failed to

6

comply with 28 U.S.C. § 1746, "[a]bsent the required language in its initial certification and the amended certifications being filed after the 60-day deadline, the [Xu Group movants'] deficient certifications will subject it to a unique defense that renders them 'incapable of adequately representing the class' and, as a result, they are not the presumptively most adequate lead plaintiff.") (also citing 15 U.S.C. 78u-4(a)(3)(B)(iii)(II)(bb)).

The Xu Group's failure to the meet this simple requirement is fatal and demonstrates that it is not a well-functioning group.

### b. The Xu Group is an Improper Lawyer-Made Group of Unrelated Investors

The Xu Group is an improper, unrelated grouping. "[C]ourts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action." *Varghese*, 589 F. Supp. 2d at 392 (S.D.N.Y. 2008); s*ee e.g.*, *Chauhan v. Intercept Pharms.*, 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021) ("The facts thus contradict their contention that they were not 'cobbled together' by counsel simply to win the position of lead plaintiff and lead counsel, and not because they believed as a group they could best serve the class. … In short, [the Xu Group] [is] the paradigmatic example of the 'random assemblage of unlike individuals' that this Court has previously rejected.") (internal citations omitted); *Kniffin v. Micron Technology, Inc.*, 359 F.Supp.3d 262, 2019 WL 2119613, at * 2 (S.D.N.Y. April 30, 2019); *Jakobsen v. Aphria Inc.*, 2019 WL 1533598, at * 3 (S.D.N.Y. Mar. 27, 2019).

The Xu Group is comprised of unaffiliated investors from around the world (Canada and China) who have not shown how they will function cohesively or independently of their counsel. Courts require members of a proposed group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Varghese,* 589 F. Supp. at 392. Courts evaluate evidence of the following *Varghese* factors:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*Id*. The Xu Group failed to provide evidence of (or affirmatively proved the opposite) that it is a proper group.

First, the Xu Group had no pre-litigation relationship. *See* Dkt. No. 30-4 at 3 ¶ 4. In the Xu Group's joint declaration, it notes that "[i]n addition to Pomerantz [LLP], we are also represented by the Hao Law Firm in this action." Dkt. No. 30-4 at 2 ¶ 1. The Hao Law Firm is not mentioned again in their papers, but it is clear that their certifications are different (*compare* Dkt. No. 30-3 at 2-3 *with* Dkt. No. 30-3 at 5-7) and likely that one member retained the one law firm while the other retained a second *and it is these law firms who formed the grouping*. *Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) ("what is conspicuously absent, is any information regarding how these [two] apparent strangers from different [countries] found each other.").

Second, the group members' involvement in the litigation so far—started with a major miscue—filing defective PSLRA certifications. Third, there are no real, thoughtful, plans for cooperation. Dkt. No. 30-4 at 3 ¶ 10. Indeed, the Xu Group put forward a non-sensical dispute resolution mechanism whereby Mr. Xu, with his claimed larger loss, would *always* have

decision-making power, rendering the grouping and purported "joint decision-making" entirely hollow. Dkt. No. 30-4 at 4-5 ¶¶ 9-10. *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *2 (S.D.N.Y. Nov. 21, 2013) (rejecting a lead plaintiff movant group with a similar dispute resolution system).

Fourth, the Xu Group retained counsel *who then transparently grouped them together.* *See Stires*, 2018 WL 5784817, at *5 (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being "precisely the type of lawyer-created group the Third Circuit cautioned about *in In re Cendant Corp*." whose members "span[] the country's geography"); *Khunt v. Alibaba Grp. Holding Ltd.,* 102 F.Supp.3d 523, 532 (S.D.N.Y. 2015) ("Many courts—including this one—have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation, because, 'To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.'") (quoting *In re Donnkenny Inc. Sec. Litig*., 171 F.R.D. 156, 157 (S.D.N.Y. 1997)); *Goldberger v. PXRE Grp., Ltd.*, 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007) ("the group as a whole shares only this lawsuit in common. … indeed, one cannot but suspect that the [Xu Group]-comprised, as it is, of disparate and apparently unrelated plaintiffs-is itself the result of the type of lawyer-driven action that the PSLRA eschews.") (citing *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005)).

While the Xu Group submitted a joint declaration in an effort to support the grouping, its boilerplate declaration is insufficient. *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation." (internal quotation

marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation"); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) (denying lead plaintiff status to a group of investors because the "joint declaration [did] not allay the *Cendant* court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff."); *see also*, *Kniffin*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (court not persuaded by a declaration that the group would function cohesively); *Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191–92 (S.D.N.Y. 2011) (rejecting a group because, among other reasons, it made no showing of any pre-existing relationship and submitted a joint declaration with only conclusory assurances; "[h]ere, there has been no showing that the individual entities comprising the Funds Group had any pre-existing relationship prior to the filing of these actions. In addition, although they have submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation."); *Jakobsen*, 2019 WL 1522598, at *2 (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently.); *Ply Gem Holdings, Inc.*, 2014 WL 12772081, at *2  (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation." (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation"). Importantly, the Xu Group provides no client-driven reason for its grouping.

Finally, the Court should not permit the members of the Xu Group to be considered individually as the members of the Xu Group did not request that any of its constituents be appointed as lead plaintiff individually in the event the Court did not appoint the grouping as a whole. Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See In re Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze v. Syntax-Brillian Corp.,* 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *Jakobsen*, 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed as lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis); *Takata*, 2018 WL 5801379, at *5 (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts.").

11

### c. Mr. Xu is an Atypical and Inadequate Options Trader and Short Seller

Mr. Xu engaged in extensive and unique options trading. Dkt. No. 30-1 at 2-3.  It appears that Mr. Xu, unlike the typical class member here who hoped the price of Yalla stock would rise, bet that the price of the Yalla stock would fall by selling calls.[2]  Thus, Mr. Xu's short sales weigh against his adequacy and typicality.  *See e.g., In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109-1110 (N.D. Cal. 2001) ("It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall. Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny."); *see also Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018).

Mr. Xu also appears to have acquired a majority of his ADSs through the sale of puts. According to Mr. Xu's loss chart 22,000 (or 74%) of the 29,600 ADSs he purchased or otherwise acquired during the Class Period came from the assignment of ADSs from his 220 put contracts. Put sellers are generally not appropriate lead plaintiffs because they are subject to unique defenses, including that their alleged losses are driven by the difference between the option's predetermined strike price and the market price on the date of acquisition. For instance, in *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, the court denied a motion to appoint as lead plaintiff a class member "whose losses overwhelmingly reflect his sale of put options" because, among other reasons, it raised questions "as to whether [he] was motivated by the same market

---

[2] *E.g.* Selling 80 contracts of Yalla 8/20/21 Call $20.00 on July 21, 2021 and letting them expire on August 20, 2021.  "***A short call strategy is one of two simple ways options traders can take bearish positions.*** It involves selling call options, or calls. Calls give the holder of the option the right to buy an underlying security at a specified price." https://www.investopedia.com/terms/s/short-call.asp (emphasis added).

incentives as class members who traded shares on the open market." 2020 WL 7698321, at \*4 (S.D.N.Y. Dec. 28, 2020). Similarly, in *Cook v. Allergan PLC*, (S.D.N.Y. Mar. 21, 2019), the court likewise denied a motion to appoint a class member for whom "approximately 60% of his claimed losses came as a result of options trading, which included sales of both puts and calls," because it "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." 2019 WL 1510894, at \*2 (internal citations omitted).

### B.   MR. WANG SHOULD BE APPOINTED LEAD PLAINTIFF

Because the Xu Group does not meet the requirements of Rule 23, the PSLRA requires the Court to consider the movant with the next-largest financial interest and undertake the same statutory inquiry with respect to that movant's adequacy and typicality. *See Varghese,* 589 F. Supp. 2d at 396 n.7.

Here, Mr. Wang is the lead plaintiff movant with the greatest losses who meets the requirements of Rule 23. As set forth herein and in his opening memorandum (Dkt. No. 18), Mr. Wang is not subject to unique defenses and satisfies the requirements of being a lead plaintiff. Mr. Wang lost approximately $109,801 in connection with his Yalla ADS transactions. Dkt. No. 18-3. Mr. Wang filed a proper certification. Dkt. No. 18-2. The class would benefit from Mr. Wang as Lead Plaintiff because he is knowledgeable, has approximately 25 years of investing experience, and holds a college degree. Dkt. No. 18 at 7. Moreover, Mr. Wang is the founder and CEO of a consulting firm. *Id.*

To overcome the strong presumption entitling Mr. Wang to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists nor has been proffered that Mr. Wang is inadequate to be

the Lead Plaintiff. As Mr. Wang has made a *prima facie* demonstration of his typicality and adequacy, has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Mr. Wang should be appointed Lead Plaintiff and his selection of Lead Counsel should be approved.

## C.    MR. WANG'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'") (quoting *Varghese*, 589 F. Supp. 2d at 398); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.")).

Mr. Wang has selected Rosen Law as Lead Counsel. The firm has the resources and expertise to litigate this action efficiently and aggressively. As Rosen Law's firm resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. (Dkt. No. 18-4). Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. *Id.* In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen as the Number 3 securities class action firm both in terms of amount recovered for investors – $438,340,000 – and

14

the number of settlements – 12.[3] Founding partner, Laurence Rosen was also recognized by Law360 as a Titan of Plaintiffs Bar for 2020.[4] Thus, the Court may be assured that by approving Mr. Wang's selection of counsel, the members of the class will receive excellent legal representation.

### III.   CONCLUSION

For the foregoing reasons, Mr. Wang's motion should be granted in its entirety and the competing motions should be denied.

Dated: October 27, 2021                         Respectfully submitted,

                                                THE ROSEN LAW FIRM, P.A.

                                                /s/ Phillip Kim
                                                Phillip Kim, Esq. (PK 9384)
                                                Laurence M. Rosen, Esq. (LR 5733)
                                                275 Madison Avenue, 40th Floor
                                                New York, New York 10016
                                                Telephone: (212) 686-1060
                                                Fax: (212) 202-3827
                                                Email: pkim@rosenlegal.com
                                                Email: lrosen@rosenlegal.com

                                                *[Proposed] Lead Counsel for Lead Plaintiff and Class*

---

[3]https://web.archive.org/web/20210616141543/https://www.issgovernance.com/file/publications/ISS-SCAS-Top-50-of-2019.pdf. at p. 6-9.
[4] https://www.law360.com/articles/1254748/titan-of-the-plaintiffs-bar-rosen-law-firm-s-laurence-rosen.

15

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim